# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **PARALLEL TOWERS III, LLC, and**<br>**CELLECTIVE SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | Case No. _____ |
| **COUNTY OF ST. CHARLES, MISSOURI,** | ) | |
| | ) | |
| **Serve: Rory O'Sullivan** | ) | |
| **County Counselor** | ) | |
| **100 N. Third St.** | ) | |
| **Suite 216** | ) | |
| **St. Charles, Missouri 63301** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT SEEKING EQUITABLE AND MANDAMUS RELIEF, AND REQUEST FOR EXPEDITED REVIEW

COMES NOW Plaintiff Parallel Towers III, LLC ("Parallel") and Plaintiff Cellective Solutions, LLC ("Cellective Solutions") (collectively "Plaintiffs"), by and through their attorneys, and for their Complaint against Defendant County of St. Charles, Missouri (the "County"), states and alleges as follows:

## NATURE OF THE MATTER

1.      This action seeks relief from the County's improper denial of Plaintiff's application for a conditional use permit to construct a telecommunication tower (the "Proposed Tower") on a parcel of property near Highway D in Defiance, Missouri. The Proposed Tower location is on the sloping southern end of a parcel that would nestle the tower against a tree line and result in a minimal visual presence. Plaintiffs seek to build this tower so that AT&T, the dominant carrier in the region, can economically provide enhanced 5G cellular services to the citizens of the County and first responders through the FirstNet network. Plaintiffs seek injunctive and mandamus relief under 47 U.S.C. § 332 to establish that the County's denial of Plaintiffs' application to construct a wireless communications

facility ("WCF") consisting of a telecommunications monopole tower, antennas and related appurtenances and ground equipment violates the "Federal Telecommunications Act of 1996" (the "TCA") because the County's denial is not based on substantial evidence in the record.  In addition, the County's denial of Plaintiffs' application for a special use permit violates Missouri state laws including Mo. Rev. Stat. § 67.5090, *et seq.*

## PARTIES

2.      Parallel is a Delaware limited liability company.

3.      Cellective Solutions is a Missouri limited liability company.

4.      The County Council and County Executive constitute the governing body of the County.

5.      The County acts through the County Council and the County Executive.

6.      The County is organized under the laws of the State of Missouri and has the capacity to sue and be sued.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1367 because these claims arise under the laws of the United States, specifically 47 U.S.C. § 332(c)(7).

8.      This case presents an actual controversy under Article III of the United States Constitution and 28 U.S.C. § 2201 because the County has violated Plaintiffs' federal rights under the TCA.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) for Plaintiffs' state law claims under Mo. Rev. Stat. § 67.5090, *et seq.*

10.     Venue is proper in this Court because the County is in this judicial district, the events and/or omissions giving rise to this action occurred in this judicial district, and the property affected is located within this judicial district.

11.     The TCA provides that "the Court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7).

## FACTS COMMON TO ALL COUNTS

I.     **FEDERAL CONTROL OVER THE CONSTRUCTION OF WIRELESS FACILITIES**

12.     The demand for wireless service and the associated bandwidth has never been higher. The transmission of wireless data is rising rapidly.  Additional cell towers and other wireless facilities must be built to meet those needs.

13.     Section 151 of the TCA establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications . . . ." 47 U.S.C. § 151.

14.     Section 1302(a) of the TCA provides that "[t]he Commission and each State commission with regulatory jurisdiction over telecommunications services shall encourage the deployment on a reasonable and timely basis of advanced telecommunications capability to all Americans . . . by utilizing, in a manner consistent with the public interest, convenience and necessity . . . regulating methods that remove barriers to infrastructure investment." 47 U.S.C. § 1302(a).

15.     Consistent with these policies, Congress and the FCC have sought to eliminate barriers and streamline the regulatory review process to facilitate deployment of wireless communications infrastructure necessary for the efficient creation of new wireless networks.

16.     Section 332(c)(7) of the TCA generally preserves State and local authority over wireless facility siting, while also placing important limitations on that authority.

17.     Section 332(c)(7)(B)(iii) requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

18.     Furthermore, the TCA provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services…" 47 U.S.C. § 332(c)(7)(B)(i)(I).

19.     Section 332(c)(7)(B)(v) provides that "[a]ny person adversely affected by any final action or failure to act" by a State or local government on a personal wireless service facility siting application "may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction."  47 U.S.C. § 332(c)(7)(B)(v).

## II.     MISSOURI UNIFORM WIRELESS COMMUNICATIONS INFRASTRUCTURE DEPLOYMENT ACT

20.     In August 2014, Missouri's Uniform Wireless Communications Infrastructure Deployment Act ("Act" or "Missouri Siting Act"), Mo. Rev. Stat. 67.5090, *et seq.*, went into effect.

21.     The Act serves to regulate the power of local governments related to telecommunication facility applications.

22.     Section 67.5094 of the Act, entitled "Prohibited Acts by Authority", prohibits a municipality from, among other things:

> (1)     Requir[ing] an applicant to submit information about, or evaluate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site;

(2)    Evaluat[ing] an application based on certain criteria, such as the availability of other potential locations for the placement of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure, or vice versa . . . . [or]

(3)    Dictat[ing] the type of wireless facilities, infrastructure or technology to be used by the applicant. . . .

(4)    Requir[ing] the removal of existing wireless support structures or wireless facilities, wherever located, as a condition for approval of an application;…

(15)   Discriminat[ing] or create a preference on the basis of the ownership, including ownership by the authority, of any property, structure, or tower when promulgating rules or procedures for siting wireless facilities or for evaluating applications;…

(18)   Condition the approval of an application on, or otherwise require, the applicant's agreement to indemnify or insure the authority in connection with the authority's exercise of its police power-based regulations;…

*Id.* at § 67.5094(1), (2), (3), (4), (15), and (18).

## III.    THE COUNTY'S ZONING CODE

23.    Section 405.505 of the Ordinances of St. Charles County, Missouri ("County Ordinances") set forth the standards for WCF development in the County. A true and accurate copy of section 405.505 is attached as **Exhibit 1.**

24.    Section 405.505(A)(1)-(4) provides rules for WCF placement based on zoning:

**A, Agricultural District**. Telecommunication facilities are allowed in the Agricultural District only with the issuance of a conditional use permit, provided that the distance from the center of the base of the tower to the nearest property line shall not be less than the height of the tower. The height of the proposed telecommunication facility shall be stated in the conditional use permit. The minimum distance between telecommunication towers shall be one (1) mile with the issuance of the conditional use permit.

**CO, Office District** and **C1, Neighborhood Commercial District** permit telecommunication facilities to a height of sixty (60) feet for one (1) user and to a height of eighty-five (85) feet for two (2) or more users, provided that the distance from the center of the tower base to the nearest ―A‖ (Agricultural) or ―R‖

(Residential) District property line shall not be less than the height of the tower. Any telecommunication facility in excess of eighty-five (85) feet in height requires the approval of a conditional use permit. The minimum distance between telecommunication towers shall be one (1) mile.

**C2, General Commercial District** permit telecommunication facilities to a height of one hundred (100) feet for one (1) user and to a height of one hundred twenty-five (125) feet for two (2) or more users, provided that the distance from the center of the tower base to the nearest —A‖ (Agricultural) or —R‖ (Residential) District property line shall not be less than the height of the tower. Any telecommunication facility in excess of one hundred twenty-five (125) feet in height requires the approval of a conditional use permit. The minimum distance between telecommunication towers shall be one (1) mile.

**I1, Light Industrial District and I2, Heavy Industrial District** permit telecommunication facilities to a height of one hundred fifty (150) feet for one (1) or two (2) users and to a height of one hundred seventy-five (175) feet for three or more users, provided that the distance from the center of the tower base to the nearest —A‖ (Agricultural) or —R‖ (Residential) District property line shall not be less than the height of the tower. Any telecommunication facility in excess of one hundred seventy-five (175) feet requires the approval of a conditional use permit. The minimum distance between telecommunication towers shall be one (1) mile except where telecommunication tower farms are permitted.

*See* **Ex. 1**, at § 405.505(A)(1)-(4).

25.     Section 405.505(C)(7)(b) provides that a conditional use permit ("CUP") is necessary whenever a proposed WCF "does not meet spacing or setback standards" as stated in section 405.505(A). *See* **Ex. 1**, at § 405.505(C)(7)(b).

26.     After a CUP application is filed, the matter is set for hearing by the Planning and Zoning Commission at their next scheduled meeting. *See* **Ex. 1**, at § 405.505(C)(5).

27.     Adjustments to the requirements of 405.505(A) "shall be granted only by approval of conditional use permits and only for good cause stated and show." *See* **Ex. 1**, at § 405.505(C)(7)(b).

28.     Section 405.510 of the County Ordinances sets forth the general criteria for submission of CUPs in the County. A true and accurate copy of section 405.510 is attached as **Exhibit 2.**

29.     Section 405.510 provides

> Before authorizing the issuance of a conditional use permit, the County Council may impose such conditions as will, in the County Council's judgment, [(1)] ensure that the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger public health, safety, or general welfare; [(2)] that the conditional use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted or to the esthetic and/or scenic values of the vicinity, nor substantially diminish and impair property values within the neighborhood; and [(3)] that the establishment of the conditional use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district.

*See* **Ex. 2**, at § 405.510(B).

30.     Section 405.511 of the County Ordinances sets forth the procedures for review of CUPs in the County. A true and accurate copy of section 405.511 is attached as **Exhibit 3.**

31.     The County Council's decision regarding the CUP is a final action for purposes of judicial review. *See* **Ex. 3**, at § 405.511(D).

## IV.     APPLICATION FOR CONDITIONAL USE

32.     Parallel is in the wireless telecommunications industry and places, constructs, modifies, operates and manages personal wireless services and telecommunication facilities on behalf of its clients across the United States.

33.     One of Parallel's clients is AT&T Corporation ("AT&T"), a national provider of personal wireless communication service, which holds one or more licenses granted by the Federal Communications Commission ("FCC"), to provide commercial radio services, or wireless telecommunication services, across the United States.

34.     In this case, AT&T engaged Parallel to locate, build, and operate a WCF for use by AT&T to provide wireless telecommunication services in the County.

35.     In turn, Parallel engaged Cellective Solutions to provide site acquisition services.

36.     Cellective Solutions, on behalf of Parallel, submitted its application for a conditional use permit with adjustments to the height, setback, and spacing standards (the "Application") to the County on July 30, 2021.

37.     The Proposed Tower in the Application is a 115-foot tall monopole telecommunications tower.

38.     After spending considerable time and resources locating a parcel of land that would meet the needs of AT&T, Plaintiffs found an ideal location. This proposed site was located at 3678 Highway D, Defiance, Missouri, 63341 ("Proposed Site").

39.     AT&T desires to relocate from another WCF in the area because that tower owner is imposing a cost structure that is not feasible and impacts AT&T's ability to economically provide enhanced 5G services to County residents and FirstNet connectivity for first responders. FirstNet is a public safety communications network for law enforcement and other first responders that provides uninterrupted connective and reduces emergency response times.

40.     The Proposed Site was chosen because it was within AT&Ts search area, zoned commercial and located in an area of heavy tree cover giving screening to nearby properties.

41.     The Proposed Site is the home of Wolf's Highway D Self-Storage, on a lot, which is only 100-foot wide, precluding the Proposed Tower from complying with the 1:1 setback requirement of County Ordinance § 405.505(A)(2).

42.     The Proposed Site is owned by Gerald and Sharon Wolf (the "Property Owners").

43.     Plaintiffs and the Property Owners have also executed a Lease to allow Parallel the right to lease certain portions of the Property for placement of the Proposed Tower.

44.     The Proposed Site identified for the Proposed Tower is zoned C1 or Neighborhood Commercial District.

45.     Even though WCFs are properly allowed in C1 zones, Plaintiffs' were required to submit a CUP application County Ordinances restrictions on height, setback, and spacing.

46.     The Property Owner has vested Plaintiffs with complete authority to pursue the Application, and any associated appeals.

## V.      CONSIDERATION BY THE PLANNING AND ZONING COMMISSION

47.      On October 4, 2021, the County informed Cellective Solutions that the Application was considered complete and would be considered by the Planning and Zoning Commission.

48.      On October 12, 2021, the County sent a letter to Cellective Solutions informing Plaintiffs that the County Planning and Zoning Board Staff recommended denial of the Application (the "Staff Report"). The Staff Report is attached as **Exhibit 4.**

49.      The Staff Report relied on the factors in County Ordinance § 405.510(B) to determine whether "good cause" could be shown to grant the Application, pursuant to County Ordinance 405.505(C)(7)(b). *See* **Ex. 4**, at pg. 3.

50.      The three factors considered by the Planning and Zoning Staff ("Staff") were:

(1)      Would the establishment, maintenance, or operation of the conditional use be detrimental to or endanger public health, safety, or general welfare?

(2)      Would the conditional use will not injure the use and enjoyment of other property in the immediate vicinity for the purposes already permitted or to the esthetic and/or scenic values of the vicinity; or substantially diminish and impair property values within the neighborhood?

(3) Would establishment of the conditional use impede the normal and orderly development and improvement of surrounding property for uses permitted in the district?

**Ex. 4**, at pg. 3-4.

51.      As to the first factor considered, the Staff concluded that "the establishment of the conditional use would not be detrimental to or endanger public health, safety, or general welfare." **Ex. 4**, at pg. 3.

52.      As to the second factor considered, the Staff concluded that the Proposed Tower would not comply. **Ex. 4**, at pg. 4. The Staff noted that "the tower base would be about 670 feet and beyond several existing mini-warehouse storage buildings" and "[t]he ground level drops about 20 feet

from Hwy D to the rear property line where the tower is proposed." *Id.* However, the Staff found that, even though "these factors combined would reduce the visual intrusion of a tower as viewed from Hwy D," the nearest resident was only 370 feet away. *Id.* As such the Staff concluded that the height of the Proposed Tower "can be visually intrusive for views from [the neighboring] residence." *Id.*

53.     As to the third factor considered, the Planning and Zoning Staff concluded that "establishment of the conditional use would not impede the normal and orderly development of surrounding properties, which are zoned A, Agricultural District." **Ex. 4**, at pg. 4.

54.     Upon request of Plaintiffs, on behalf of Parallel, the hearing on the Application was continued to the November 17, 2021 meeting of the Planning and Zoning Commission.

55.     At the November 17, 2021 meeting, the Planning and Zoning Commission considered of the Application, and ultimately decided to recommend that the County Council deny the Application.

56.     The recommendation of the Planning and Zoning Commission was communicated in writing to Cellective Solutions on November 18, 2021. A true and accurate copy of this letter is attached as **Exhibit 5.**

57.     On December 14, 2021, per County Ordinance section 405.511, Cellective Solutions, on behalf of Parallel, executed the Conditional Use Permit Stipulation Agreement in order to forgo its right to a formal administrative hearing.[1]

## VI.     CONSIDERATION BY THE COUNTY COUNCIL

---

[1]     Plaintiffs' consent to the Conditional Use Permit Stipulation Agreement was not a tacit agreement to any of the findings or conclusions of the Planning and Zoning Commission. Plaintiffs' consent to the expedited process was wholly based on the County's promise that if Plaintiffs did consent, the Application would be considered on December 20, 2021 instead of in March 2022, at the earliest. The County informed Plaintiffs that if it did not consent to the Conditional Use Permit Stipulation Agreement, it would have to formally request to extend the review period under section 67.5096 RSMo, expressly requiring Plaintiffs to forgo its right to have the Application considered within a reasonable period of time, under Missouri and federal law, in order to proceed with the administrative hearing.

58.     On December 20, 2021, the County Council met for a duly noticed public meeting.

59.     At this December 20, 2021 meeting, the County Council considered whether to approve the Application, but ultimately denied the Application.

60.     The Director of Planning and Zoning Division sent a brief written statement of denial dated December 21, 2021 to Cellective Solutions. A true and accurate copy of this letter attached as **Exhibit 6.**

61.     The reason for the denial was not included in the December 21, 2021 letter. *See* **Ex. 6.**

62.     On January 11, 2021, twenty-one (21) days after the written statement of denial was issued, the County Council issued a written explanation of its reasoning for the December 20, 2021 denial of the Application. The County Council noted that good cause was not stated to support the height, setback, and spacing changes, and, as such, the County Council did not have the authority to approve the Application. A true and accurate copy of the County's written explanation for its decision is attached as **Exhibit 7.**

63.     The County Council did not state what factors or considerations govern a determination of "good cause." *See* **Ex. 7**.

64.     The County Council only listed two paragraphs listing its "Conclusions of Law." *See* **Ex. 7**, at ¶¶ 62-63.

65.     Neither paragraph included an explanation of why good cause was not shown, but instead made conclusions without support or analysis. *See* **Ex. 7**, at ¶¶ 62-63.

66.     The only reasoning stated for the denial of the Application came from the recommendation of denial in the Staff Report. *See* **Ex. 4.**

### COUNT I — FAILURE TO PROVIDE CONTEMPORANEOUS WRITTEN DENIAL, IN VIOLATION OF THE TCA

67.     Plaintiffs restate and incorporate by reference the preceding allegations above as if fully set forth herein.

68.     The TCA comprehensively addresses telecommunications policy and the development of facilities to provide telecommunications services throughout the United States.  The TCA restricts the authority of local governments to prevent the development of WCFs needed to provide adequate wireless communications services.

69.     The TCA also provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be **in writing** and supported by substantial evidence contained in a written record." 42 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

70.     The Supreme Court has established that a written denial need not be provided in the same document as the reasoning for such denial, but the reasoning must be provided, in writing, "essentially contemporaneously" to the written denial. *See T-Mobile South, LLC v. City of Roswell, Ga.*, 574 U.S. 293 (2015) ("Because an entity may not be able to make a considered decision whether to seek judicial review without knowing the reasons for the denial of its application, and because a court cannot review the denial without knowing the locality's reasons, the locality must provide or make available its written reasons at essentially the same time as it communicates its denial.")

71.     The Supreme Court has held that a statement of reasoning provided twenty-six (26) days after a written denial was not provided "essentially contemporaneously" and, as such, was a violation of the written denial requirement of the TCA. *City of Roswell, Ga.*, 574 U.S. at 308.

72.     On December 20, 2021, the County Council voted to deny the Application.

73.     The Director of Planning and Zoning Division sent a brief written statement of denial dated December 21, 2021 to Cellective Solutions. *See* **Ex. 6.**[2]

---

[2]     Under Missouri law, a final action triggering the 30-day filing deadline does not occur until the denial is communicated in writing. *See USCOC of Greater Missouri v. City of Ferguson, Mo.,* 583 F.3d 1035, 1041 (8th Cir. 2009) ("The plain language of the TCA indicates that 'final action' does not occur until issuance of a written decision.").

74. In a writing dated January 11, 2021, the County Council provided to Cellective Solutions its Finding of Facts, Conclusions of Law, Decision and order dated January 11, 2021. *See* **Ex. 7.**

75. The County failed to provide reasons in writing contemporaneously with its denial of the Application because the written explanation was sent twenty-one (21) days after the written denial.

76. The TCA provides, in pertinent part, that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action, or failure to act, commence an action in any court of competent jurisdiction.  The court shall herein decide such action on an expedited basis.

47 U.S.C. § 332(c)(7)(B)(v).

77. Plaintiffs are "person[s] adversely affected" as that term is used in 47 U.S.C. § 332(c)(7)(B)(iii).

78. Wireless telecommunications service is a "personal wireless service" for purposes of the TCA. 47 U.S.C. § 332(c)(7)(C)(i).

79. The TCA has been interpreted to vest courts of competent jurisdiction with authority to grant mandamus relief if such relief would be warranted under the circumstances.

80. Based on Supreme Court precedent, the County Council failed to issue a contemporaneous written statement detailing its reasoning in violation of the TCA.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a) Issue an Order requiring the County to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of the Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

(b) Issue an Order prohibiting the County from denying the Application;

(c) Issue an Order requiring the County to complete the ministerial act of approving the Application;

(d)     Issue a writ of mandamus directing the County to discharge its duties properly and to approve the Application; and

(e)     Provide for such other and further relief as the Court deems just and proper.

### COUNT II — FAILURE TO SUPPORT DENIAL
### WITH SUBSTANTIAL EVIDENCE CONTAINED
### IN THE WRITTEN RECORD, IN VIOLATION OF THE TCA

81.     Plaintiffs restate and incorporate by reference the preceding allegations above as if fully set forth herein.

82.     The TCA also provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and **supported by substantial evidence contained in a written record**." 42 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).

83.     The County's denial of the Application is not supported by substantial evidence contained in the written record.

84.     The County Council did not explain what factors it considered when making the determination of "good cause" relating to the proposed changes to the height, setback, and spacing requirements.

85.     The County Council did not state a basis for why it determined there was a lack of "good cause" shown by Parallel and Cellective Solutions regarding the proposed changes to the height, setback, and spacing requirements.

86.     The County Council provided a recitation of the hearing, but failed to offer any statement, analysis, or reasoning, for its finding that good cause was not shown.

87.     Furthermore, the evidence contained in the record supports approval of the Application. The only single reason given for the denial of the Application came from the Staff Report. *See* **Ex. 4**. The Staff report considered three factors on which to decide the Application, as stated below:

14

(1)     Would the establishment, maintenance, or operation of the conditional use be detrimental to or endanger public health, safety, or general welfare?

(2)     Would the conditional use will not injure the use and enjoyment of other property in the immediate vicinity for the purposes already permitted or to the esthetic and/or scenic values of the vicinity; or substantially diminish and impair property values within the neighborhood?

(3) Would establishment of the conditional use impede the normal and orderly development and improvement of surrounding property for uses permitted in the district?

*Id.*, at pg. 3-4.

88.     The Staff found that the requests contained in the Application represented neither a safety issue nor an impediment to development in the surrounding district. *See* **Ex. 4**, at pg. 3-4.

89.     The Staff only found that one single factor was not met; the Staff concluded that the Proposed Tower would have a negative aesthetic effect on a single neighboring residence. *See* **Ex. 4**, at pg. 4.

90.     Under federal law, aesthetic concerns, standing alone, are not substantial evidence that can support the denial of provider's application. *See Municipal Communications, LLC v. Cobb Cty., Ga.*, 796 F. App'x 663, 669 (11th Cir. 2020).

91.     Insofar as the County Council's reasoning was based on the Staff Report's analysis of the applicable factors, there is no substantial evidence contained in the record on which the Application can be properly denied. No substantial evidence supports denial on the basis of aesthetic concerns.  The Proposed Tower would be located in a manner to reduce visual intrusion.  For example, the Proposed Tower would be located on the southern portion of the parcel where the ground level drops about 20 feet from the front of the parcel.  In addition, the Proposed Tower would be nestled against a tree line of a wooded area. These factors substantially minimize the visual presence of the Proposed Tower.

92. Likewise, no substantial evidence supports the denial on the basis of height or setback issues. The Staff noted that there were no health, safety, or general welfare concerns and the County Council failed to articulate any reason for denial on these grounds.

93. Finally, the Staff noted the one (1) mile spacing requirement, pursuant to County Ordinances § 405.505(A)(2), as a reason for denying the Proposed Tower. However, the County's spacing ordinance has been superseded by the Missouri Siting Act, which prohibits, among other things, an authority from evaluating an application based on the availability of other potential locations for the placement of wireless support structures or wireless facilities. *See* MO. REV. STAT. § 67.5094(2).

94. Based on the record before the County Council, the County's denial of the Application is not supported by substantial evidence and as such is a violation of the TCA.

WHEREFORE, Plaintiffs respectfully request that this honorable Court:

(a) Issue an Order requiring the County to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of the Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

(b) Issue an Order prohibiting the County from denying the Application;

(c) Issue an Order requiring the County to complete the ministerial act of approving the Application;

(d) Issue a writ of mandamus directing the County to discharge its duties properly and to approve the Application; and

(e) Provide for such other and further relief as the Court deems just and proper.

## COUNT III — DISCRIMINATION AMONGST EQUIVALENT PROVIDERS, IN VIOLATION OF THE TCA

95. Plaintiffs restate and incorporate by reference the preceding allegations above as if fully set forth herein.

96. The TCA requires that any actions a locality takes be made on a competitively neutral and nondiscriminatory basis. 47 U.S.C. § 332(c)(7)(B)(i)(I).

97.     The TCA provides that the "regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not unreasonably discriminate among providers of functionally equivalent services…" 47 U.S.C. § 332(c)(7)(B)(i)(I).

98.     While the County Council offered no formal conclusion of its reasoning for denying the Application, the CUP was necessary because of the height, setback and spacing restrictions under County Ordinance § 405.505(A)(2).

99.     However, the County has allowed other WCFs in excess of 85-feet within the area.

100.    Furthermore, another 115-foot WFC was permitted by the County within the vicinity of the Proposed Site.

101.    Defendants lack any reasonable basis to treat the Application differently from the applications of the owners of the other cell towers in the County.

102.    Plaintiffs provide a functionally equivalent service to that provided by the owners and operators of the other towers in the County.

103.    The County has, therefore, unreasonably discriminated against Plaintiffs in violation of the TCA.

WHEREFORE, Plaintiffs respectfully request that this honorable Court:

(a)     Issue an Order requiring the County to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of the Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

(b)     Issue an Order prohibiting the County from denying the Application;

(c)     Issue an Order requiring the County to complete the ministerial act of approving the Application;

(d)     Issue a writ of mandamus directing the County to discharge its duties properly and to approve the Application; and

(e)     Provide for such other and further relief as the Court deems just and proper.

**COUNT IV — ACTION FOR INJUNCTION
AND WRIT OF MANDAMUS PURSUANT TO THE
MISSOURI UNIFORM WIRELESS COMMUNICATIONS
INFRASTRUCTURE DEPLOYMENT ACT**

104.    Plaintiffs restate and incorporate by reference the preceding allegations above as if fully set forth herein.

105.    The Missouri Siting Act serves to regulate the power of local governments related to WCF applications.

106.    The Missouri Siting Act places restrictions on local jurisdictions in considering applications for wireless facilities, and in particular, section 67.5094 of the Act, entitled "Prohibited Acts by Authority", prohibits a municipality from considering certain criteria in regard to an application for placement of a WCF.

107.    Section 67.5094 of the Act provides:

> In order to ensure uniformity across the state of Missouri with respect to the consideration of every application, an authority shall not:
>
> (1)     Require an applicant to submit information about, or evaluate an applicant's business decisions with respect to its designed service, customer demand for service, or quality of its service to or from a particular area or site;
>
> (2)     Evaluate an application based on the availability of other potential locations for the placement of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure, or vice versa; provided, however, that solely with respect to an application for a new wireless support structure, an authority may require an applicant to state in such applicant's application that it conducted an analysis of available collocation opportunities on existing wireless towers within the same search ring defined by the applicant, solely for the purpose of confirming that an applicant undertook such an analysis; ....
>
> (3)     Dictate the type of wireless facilities, infrastructure or technology to be used by the applicant...

(4)     Require the removal of existing wireless support structures or wireless facilities, wherever located, as a condition for approval of an application;…

(15)     Discriminate or create a preference on the basis of the ownership, including ownership by the authority, of any property, structure, or tower when promulgating rules or procedures for siting wireless facilities or for evaluating applications;…

(18)     Condition the approval of an application on, or otherwise require, the applicant's agreement to indemnify or insure the authority in connection with the authority's exercise of its police power-based regulations;…

*Id.* at § 67.5094(1), (2), (3), (4), (15), and (18).

108.     Missouri law is clear that any action taken by or an ordinance enacted by a local authority that conflicts with state law is void. "If a local law either prohibits what state law allows, or allows what state law prohibits, then a local law is in conflict with the state law and, therefore, preempted…Thus, local ordinances regulating matters upon which there is a state law must be in harmony with the state on that subject." *Borron v. Farrenkopf*, 5 S.W.3d 618, 622 (Mo. App. W.D. 1999). "An ordinance conflicts with state law if it permits something state law prohibits, or prohibits something state law permits." *State ex rel. Sunshine Enterprises of Missouri, Inc. v. Bd. of Adjustment of City of St. Ann*, 64 S.W.3d 310, 314 (Mo. 2002). If a municipality's ordinance conflicts with state law, it is void. *City of St. Peters v. Roeder*, 466 S.W.3d 538 (Mo. 2015).

109.     The Act permits authorities to  "exercise zoning, land use, planning, and permitting authority within their territorial boundaries with regard to the siting of new wireless support structures" but specifies that that authority is constrained by the limitations provided in the applicable statutes, including in RSMo § 67.5094. This is consistent with case law interpreting Missouri's telecommunications statute, which has explicitly held that the statute is applicable to Missouri municipalities and limits the authority of a municipality to exercise its zoning authority. *Eco-Site, LLC v. City of Univ. City, Missouri*, 431 F. Supp. 3d 1069, 1079 (E.D. Mo. 2019) ("This Court concludes that

zoning authorities like the defendant [University City, Missouri Board of Adjustment] are subject to § 67.5094's prohibitions when reviewing applications like the plaintiffs' variance request.").

110.    The County Ordinances restrict the siting of WCF in C1 zones by requiring a "minimum distance between telecommunication towers" of one (1) mile. *See* **Ex. 1**, at § 405.505(A)(2).

111.    The spacing requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(1), which prohibits evaluation of an applicant's business decisions, in that it replaces the business judgment of Plaintiffs and AT&T with the arbitrary judgement of the County as to where the Proposed Tower is needed. Whether a WCF is needed within one (1) mile of another WCF is a business decision protected by Missouri law.

112.    The spacing requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(2), which prohibits an authority from evaluating an application based on the availability of other potential locations for the placement of wireless support structures or WCFs.  The spacing requirement allows for the evaluation of a WCF application based on the perceived availability of another wireless service, in violation of Missouri law.

113.    The spacing requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(3), which provides that an authority is not permitted to dictate the type of wireless facilities, infrastructure, or technology to be used by the applicant. AT&T provided Plaintiffs with a narrow search radius in which to construct a tower that would work properly with the other towers in the AT&T's network and provide adequate service and coverage for its customers. AT&T will utilize the Proposed Tower to upgrade its current network and technology—including its e-911 capabilities.  The prohibition of the Proposed Tower would dictate to the provider where it must locate its tower and thus its infrastructure design and whether it can effectively and efficiently improve its technology (including by limiting its ability to provide a FirstNet network improvement for 911 service in the area).

114.     The spacing requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(4), which prohibits a locality from requiring an applicant to remove an existing tower as a condition of approval for its new tower. The County's prohibition on WCFs within one (1) mile of one another effectively prohibits Plaintiffs from constructing a tower at the Proposed Site in the absence of the removal of the tower on the adjacent property.

115.     The County Ordinances restrict the siting of WCF in C1 zones by limiting the height of a WCF to eighty-five (85) feet. *See* **Ex. 1**, at § 405.505(A)(2).

116.     The height requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(1) in that the height of the tower is a decision impacted by the need in the area, and is, as such, a business decision  reserved for the Plaintiffs and AT&T under Missouri law.

117.     The height requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(3) in that a restriction on the height of the tower limits the type of technology available to meet the needs of the community, as determined by Plaintiffs and AT&T. Dictating tower height, dictates the type of technology available to service providers.

118.     The height requirement of County Ordinance § 405.505(A)(2) is directly prohibited by Missouri Siting Act § 67.5094(15), which prevents discrimination or the creation of a preference based on ownership of the tower. The County has already approved the tower application for SBA's tower at nearly the same location and at the same height. It would be discriminatory to now reject Plaintiffs' Application.

119.     Furthermore, section 67.5094(18) prevents the county from imposing unreasonable aesthetic requirements or obligations on the Proposed Tower. Insofar the County Council relied on the Staff Report, which recommended denial of the Application based solely on aesthetic concerns, such a reliance is a violation of Missouri law. It is further unreasonable to assert that the scenic

enjoyment of the nearest residence would be impacted where the residence faces a commercially zoned

property as well as another equally as tall tower.

WHEREFORE, Plaintiffs respectfully request that this honorable Court:

(a)   Issue an Order requiring the County to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of the Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the Missouri Siting Act;

(b)   Issue an Order prohibiting the County from denying the Application;

(c)   Issue an Order requiring the County to complete the ministerial act of approving the Application;

(d)   Issue a writ of mandamus directing the County to discharge its duties properly and to approve the Application; and

(e)   Provide for such other and further relief as the Court deems just and proper.

Dated:  January 20, 2022

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Eric D. Martin*
    Eric D. Martin, #MO47558
    Emma R. Cormier #MO72813
    One Metropolitan Square
    211 North Broadway, Suite 3600
    St. Louis, Missouri  63102
    Telephone:  (314) 259-2000
    Facsimile:  (314) 259-2020
    eric.martin@bclplaw.com

    ATTORNEYS FOR PLAINTIFFS